UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHARLES M. GILMORE, ET AL.

VERSUS

OFFICE OF ALCOHOL AND TOBACCO
CONTROL OF THE LOUISIANA
DEPARTMENT OF REVENUE, ET AL.

CIVIL ACTION

NO. 14-434-JWD-SCR

## RULING AND ORDER

This matter comes before the Court on Defendants' Motion for Partial Dismissal and for Other Relief (Doc. 13). Plaintiffs oppose the motion. (Doc. 26). The Court has reviewed the extensive briefing by the parties and is prepared to rule. Oral argument is not necessary.

Considering the law, allegations of the complaint, and arguments of the parties,

(A) **IT IS ORDERED** that Defendants' Motion for Partial Dismissal and for Other Relief (Doc. 26) ("Defendants' Motion") is **GRANTED IN PART** and **DENIED IN PART**;

(B) **IT IS FURTHER ORDERED** that Defendants' Motion is **DENIED** in that, because the claims at issue arise under 42 U.S.C. §§ 1981, 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e *et seq.*, this Court has subject matter jurisdiction over Plaintiffs' claims, and no exhaustion with the Louisiana Civil Service Commission is required. *See Owens v. La. State Dep't of Health and Hosps.*, No. 07-743, 2007 WL 4442269, at *2 (M.D. La. Dec. 14, 2007);

(C) **IT IS FURTHER ORDERED** that, with respect to any supposed claims under Title VII against Commissioner Hebert in his official or individual capacity, Defendants' Motion is **DENIED AS MOOT**, as Plaintiffs concede that they are not making such claims;

**(D) IT IS FURTHER ORDERED** that, with respect to any supposed claims under § 1981 or § 1983 against the Office of Alcohol and Tobacco Control of the Louisiana Department of Revenue ("ATC") and Commissioner Hebert in his official capacity, Defendants' Motion is **DENIED AS MOOT**, as Plaintiffs concede that they are not making such claims;

**(E) IT IS FURTHER ORDERED** that, to the extent that Defendants' Motion was intended to reach Plaintiffs' §§ 1981 and 1983 claims against Commissioner Hebert in his individual capacity, Defendants' motion is **DENIED WITHOUT PREJUDICE**;

**(F) IT IS FURTHER ORDERED** that, with respect to any supposed claims of "systemic discrimination," Defendants' Motion is **DENIED AS MOOT**, as Plaintiffs concede they do not allege pattern and practice as a theory of recovery;

**(G) IT IS FURTHER ORDERED** that any claims under Title VII arising under the following allegations are time-barred, as they are discrete acts occurring before December 8, 2011:

1. Gilmore's allegation that he was placed in a vacant Director position on June 8, 2011; removed from that position on November 7, 2011; and replaced by a Caucasian male with no experience with the ATC. (Doc. 1, ¶ 12(A));
2. Gilmore's allegation that on November 27, 2011, he was removed from a detail in an upper-level supervisory position because Hebert accused him of investigating a detail incorrectly. (Doc. 1, ¶ 12(C));
3. McDowell's allegation that on June 28, 2011, he won the assignment of a new vehicle in an agency vehicle lottery but never received it. (Doc. 1, ¶ 14(B)); and
4. McDowell's allegation that on November 29, 2011, he was accused of falsifying payroll documents and issued a reprimand, which included a demotion from Agent Four to an Agent Three position and a seven percent reduction in pay. (Doc. 1, ¶ 12(D)).

2

**(H) IT IS FURTHER ORDERD** that, with respect to the Plaintiffs' § 1981 claims arising out of the allegations in paragraph (G) of this order,

- **(i.)** Defendants' motion to dismiss the claims arising from the allegations in (G)(3) and (G)(4) is **DENIED AS MOOT**, as Defendants have admitted that such claims are not time barred;

- **(ii.)** Defendants' motion to dismiss the claims arising from the allegations in G(1) and (G)(2) is **DENIED**, as these claims are properly characterized as removal claims subject to a four-year statute of limitations. *See Hubert v. City of Baton Rouge/Par. of E. Baton Rouge, Dep't of Pub. Works*, No. 08-515, 2009 WL 774343, at *1 (M.D. La. Mar. 20, 2009). Thus, the claims are timely; and

- **(iii.)** Plaintiffs are given leave to amend to assert a failure to promote claim, should they so choose;

**(I) IT IS FURTHER ORDERED** that, with respect to the following allegations related to Plaintiffs' Title VII claims of discrimination:

1. Plaintiffs' claims that they were required to submit weekly reports, an addition to their normal job duties. (Doc. 1, ¶¶ 12(B); 14(A); 16(A));
2. Gilmore's claim that on December 8, 2011, Lori Gilmore told him that she was instructed to "keep tabs" on him. (Doc. 1, ¶ 12(D));
3. Gilmore's claim that on February 1, 2012, he was reprimanded for not installing a GPS tracking device in his assigned vehicle. (Doc. 1, ¶ 12(E));
4. Gilmore's claim that on February 6, 2012, he was relocated to Region 4, without notice and far from his family, in his same job title and pay. (Doc. 1, ¶ 12(F));
5. Gilmore and McDowell's claims that on July 9, 2012, they requested from Hebert, but did not receive, two additional agents to assist with an undercover investigation. (Doc. 1, ¶¶ 12 (G); 14(G));
6. Gilmore's claim that on July 25, 2012, he was instructed by Hebert to perform additional job duties.

3

      Gilmore alleges that he was required to perform the duties of his subordinates in addition to his down, and that Caucasian supervisors did not have to do the duties of their subordinates. (Doc. 1, ¶ 12(H));

7. Gilmore's claim that during his FMLA leave, he was temporarily replaced by a Caucasian employee and was asked to obtain a second medical opinion. While Gilmore admits that a second opinion is lawful under the FLMA, he asserts it is rare for the Department of Revenue to make such a request. (Doc. 1, ¶ 12(I));
8. Gilmore and McDowell's claims that on August 22, 2012, ATC employee Brette Tingle informed them that Commissioner Hebert confided in Tingle that he wanted to "break up the black trio." Plaintiffs assert that the "black trio" refers to Gilmore, McDowell and Bennie Walters. (Doc. 1, ¶¶ 12(J); 14(J));
9. Gilmore's claim that on August 23, 2012, while he was on FMLA leave, Commissioner Heber announced a new firearm policy which required every agent on extended leave to turn in their weapon. Gilmore alleges that Hebert applied this retroactively to him, and that an agent was sent to his home to collect his badge, gun, and Commission card. (Doc. 1, ¶ 12 (K));
10. Gilmore's claim that between December 27, 2012, and January 17, 2013, he was required to submit weekly reports from his treating physician to Commissioner Hebert. (Doc. 1, ¶ 12(O));
11. McDowell's claim that on June 28, 2015, he won the assignment of a new vehicle in an agency lottery but did not immediately receive the vehicle. Sometime later, McDowell was told to pick out a new vehicle for use. Further, McDowell alleges that when he was demoted to Agent 3, his vehicle was reassigned. (Doc. 1, ¶ 14 (B));
12. McDowell's claim that on December 13, 2011, he received a second proposal of disciplinary action from Hebert due to insubordination and allegedly providing false information. (Doc. 1, ¶ 14(E));
13. McDowell's claim that on May 5, 2012, he requested but did not receive a transfer to a different position within his district, and that he requested an exception to the vehicle home storage policy which was also denied. (Doc. 1, ¶ 14(F));
14. McDowell's claim that on July 11, 2012, his request for tuition reimbursement was denied. McDowell asserts that HR informed him that approval would "not be a

4

problem" even though the courses were not on the approved list of courses, but that Hebert refused the request. (Rec. Doc. 1, ¶ 14(H));
15. McDowell's claim that on August 6, 2012, he requested a new badge because it was in poor condition but did not receive a new badge despite others receiving new ones. (Rec. Doc. 1, ¶ 14(I));
16. McDowell's claim that on September 5, 2012, he received a third proposed letter of disciplinary action, which included a demotion and reduction in pay. The letter was later rescinded. (Doc. 1, ¶ 14 (K));
17. McDowell's claim that on September 6, 2012, he and four other agents were subjected to an internal investigation, which included a physical pat down of his person. (Doc. 1, ¶ 14(L));
18. McDowell's claim that on November 1, 2012, he was subjected to an internal investigation. McDowell claims a large portion of the interview related to Gilmore. (Doc. 1, ¶ 14(O));
19. McDowell's claim that on November 19, 2012, he received a "letter of improvement" from Hebert alleging he failed to ride along with new agents and chose instead to ride along with McDowell. (Doc. 1, ¶ 14(R));
20. McDowell's claim that on December 23, 2012, he reluctantly resigned his employment at the ATC because of health reasons allegedly due to the emotion harm deliberately inflicted on him by Hebert. (Doc. 1, ¶ 14(S));
21. Hingle's claim that he was given reprimands, unfavorable performance ratings, and "set up" for failure by Hebert. (Doc. 1, ¶ 16(B));
22. Hingle's claim that on July 6, 2012, he received an "improvement letter" from Hebert because one of his subordinates had not sufficiently organized a training program for new agents. Hingle alleges that his subordinate was directly instructed by Hebert to organize the training session. (Doc. 1, ¶ 16(C));
23. Hingle's claim that he was assigned additional duties and an "unrealistic work load," or alternatively, "bypassed [him] and assigned tasks to his subordinates." Hingle alleges that these assignments were never apart of his job duties. (Doc. 1, ¶ 16 (D));
24. Hingle's claim that he was not informed of important enforcement activities and policy changes by Hebert.

5

        Hingle alleges his subordinates informed him of these changes. (Doc. 1, ¶ 16 (E));

25. Hingle's claim that he was ridiculed and yelled at, referred to as "incompetent" and a "zero," and criticized and demeaned in the presence of subordinate employees by Hebert. (Rec. Doc. 1, ¶¶ 16(F), (G));
26. Hingle's claim that on August 15, 2012, disciplinary action was contemplated against him due to Hingle's subordinate's failure to properly address Commissioner Hebert. (Rec. Doc. 1, ¶ 16 (H));
27. Hingle's claim that on December 4, 2012, he received a "letter of improvement" from Hebert. (Doc. 1, ¶ 16 (J));
28. Hingle's claim that on December 27, 2012, he received a proposal disciplinary action that was later rescinded. (Doc. 1, ¶ 16(K));
29. Hingle's claim that on January 8, 2013, he received a second notice of proposed dismissal. (Doc. 1, ¶ 16 (M));
30. Hingle's claim that on May 3, 2013, he accepted a "voluntary," non-disciplinary demotion from Director to Agent 3. Hingle alleges he took this demotion so that Hebert would not make a substantial cut to his salary. Hingle also alleges that disciplinary action against him was withdrawn. (Doc. 1, ¶¶ 16 (N), (O));

**(i.)** Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**;

**(ii.)** With respect to the claims arising from the allegations in (I)(11) (McDowell not immediately receiving a vehicle and losing the vehicle after a demotion), Defendants' motion is **DENIED** in that Plaintiffs' allegation that he suffered a demotion is an adverse employment action, as Defendants concede; Defendants' motion is **GRANTED** with respect to the claims arising from the remaining allegations in paragraph (I)(11), as they do not constitute an adverse employment decision, which involves "'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503-04 (5th Cir. 2014), and no leave of court is granted to amend these claims;

6

> **(iii.)** Those claims arising from the allegations in (I)(21) (Hingle's reprimands, unfavorable performance ratings, and "set up" for failure) and (I)(27) (Hingle's letter of improvement) are **DISMISSED** because they do not constitute adverse employment actions. "The Fifth Circuit has repeatedly stated that 'an employment action that does not affect job duties, compensation, or benefits' is not an adverse employment action." *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971, 982 (E.D. Tex. 2004) (citations omitted). "Documented reprimands alone, while possibly affecting future employment decisions, do not constitute an adverse employment action." *Id.* at 981 (citations omitted). "Similarly, negative performance evaluations, even if undeserved, are not adverse employment actions." *Id.* (citations omitted). In short, "[n]egative performance evaluations, standing alone, cannot constitute an adverse employment action." *Id.* (citations omitted). Accordingly, no leave of court is granted to amend these claims;
>
> **(iv.)** With respect to those claims arising from the allegations in (I)(6) (Gilmore's claim he had to perform the work of his subordinates), Defendants' motion is **DENIED**.  Gilmore has plausibly stated a claim that being required to perform his subordinates duties in addition to his own may constitute an adverse employment action. "[A] change in or loss of job responsibilities . . . may be so significant and material that it rises to the level of an adverse employment action." *Thompson*, 754 F.3d at 504.  While it is "a rare case where a change in employment responsibilities qualifies as an adverse employment action," *Id.* at 504 (citing *Kidd v. Mando Am. Corp.*, 731 F.3d

7

1196, 1204 n. 11 (11th Cir.2013)), "in unusual instances the change may be so substantial and material that it does indeed alter the 'terms, conditions, or privileges' of employment." *Id.* (citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1245 (11th Cir. 2001)). Because the Court is evaluating the Plaintiffs' complaint on a motion to dismiss, the Court's "task . . . is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Thompson* 764 F.3d at 503. Accordingly, the motion is denied in this respect.

**(v.)** With respect to those claims arising from the allegations in (I)(4) (Gilmore's relocation with same job title and pay), Defendants' motion is **DENIED**. The Fifth Circuit has recognized that, "[t]o be the equivalent to a demotion [and thus an adverse employment action], a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Thompson*, 764 F.3d at 503-04. Here, again, the issue is whether the claim is plausible, not whether plaintiff is likely to succeed on this issue. *See id.* at 503. Plaintiff's allegation that he was transferred to a new location states a claim that is plausible. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) ("Asking for [such] plausible grounds to inter [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed].") (citation omitted)); *see also Cooper v. United Parcel*

8

*Serv., Inc.*, No. 08-1583, 2008 WL 4809153, at *4 (E.D. La. Nov. 3, 2008) ("The plaintiff alleges that he suffered an adverse employment action by being transferred to a new position in a new location, which was farther away from his home. A strong or weak case, whether the transfer constitutes an adverse employment action must be decided at trial. The plaintiff's allegations are sufficient to put the defendant on notice of the basis of his claim."). Defendants' motion with respect to these claims is denied;

(vi.) Those claims from the allegations in (I)(23) (Hingle's claim of additional duties and an "unrealistic work load") are **DISMISSED**. Hingle has not sufficiently alleged that his changes in job duties arise to the level of an adverse employment action. Even though he alleges an "unrealistic work load," this, in and of itself, is not enough. *See Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir.1998) (holding that being assigned an unusually heavy work load is merely administrative matter and not an adverse employment action). However, Hingle has alleged that these assignments were never a part of his job duties. It is not clear, from the face of the complaint, whether this change in job responsibilities is significant and material enough to rise to the level of an adverse employment action. *See generally*, *Thompson, supra*. Thus, Plaintiffs will be given leave to amend their complaint with respect to this issue; and

(vii.) All Title VII discrimination claims based on the allegations in paragraph (I) not specifically addressed above are **DISMISSED**, and no leave of court is granted to address these claims. Plaintiffs have stated that all of these

      allegations except (I)(14) (denial of tuition reimbursement) may not constitute adverse employment actions, and the Court agrees with this assessment. Further, the Court also finds that any claims arising from the allegations in paragraph (I)(14) do not constitute adverse employment actions.

**(J)** With respect to Defendants' Motion to dismiss the following Title VII retaliation claims:

    (1) Gilmore's claim he was issued an "improvement letter" from Hebert on November 19, 2012, after he filed his charge of discrimination to the EEOC. Gilmore alleges that Hebert "falsely alleged" that he failed to secure evidence, he directed his agents of conducting only two more inspections than the monthly minimum, he failed to ride along with new agents when he chose to ride along with McDowell, and that he took his state-issued weapon out of state, left it unattended and allowed it to be stolen (Doc. 1, ¶ 12(M)).

    (2) Gilmore's claim that between December 27, 2012, and January 17, 2013, he was required to submit weekly reports from his treating physician to Commissioner Hebert. (Doc. 1, ¶ 12(O));

    (3) McDowell's claim that on November 1, 2012, he was subjected to an internal investigation. McDowell claims a large portion of the interview related to Gilmore. (Doc. 1, ¶ 14(O));

    (4) McDowell's claim that on November 19, 2012, he received a "letter of improvement" concerning his work performance. (Doc. 1, ¶ 14(R));

    (5) McDowell's claim that on December 23, 2012, he reluctantly resigned his employment at the ATC because of health reasons allegedly due to the emotion harm deliberately inflicted on him by Hebert. (Doc. 1, ¶ 14(S));

    (6) Hingle's claim he was sent a "letter of improvement" on December 4, 2012, after he filed a charge of discrimination. (Doc. 1, ¶¶ 16(I), (J)).

    (7) Hingle's claim he received two proposed disciplinary actions on December 27, 2012, and January 22, 2013. Hingle alleges the December letter was rescinded.[1] (Doc. 1, ¶¶ 16(K), (M)); and

---

[1] While Defendants assert that both letters were rescinded, Plaintiffs complaint does not clearly allege whether the January letter was rescinded.

10

      (8) Hingle's claim that on May 3, 2013, he accepted a "voluntary," non-disciplinary demotion from Director to Agent 3. Hingle alleges he took this demotion so that Hebert would not make a substantial cut to his salary. Hingle also alleges that disciplinary action against him was withdrawn. (Doc. 1, ¶ 16(O).

**(i.)** Defendants' Motion is **DENIED** with respect to claims arising from (J)(8) (Hingle's demotion), as this plausibly states a claim of an adverse employment action. An adverse employment action in Title VII retaliation turns on whether the action was materially adverse such that it would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Anthony v. Donahoe*, 460 Fed. Appx. 399, 404 (5th Cir.2012) (quoting *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)).[2]

**(ii.)** Defendants' Motion is **GRANTED** with respect to the claims arising from (J)(1), (J)(3), (J)(4), (J)(6), and (J)(7) (all some form of disciplinary actions). "[A] reprimand can serve as the basis for a retaliation claim under certain circumstances[.]" *Thibodeaux-Woody v. Houston Community College*, 593 Fed. Appx. 280, 286 (5th Cir. 2014) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir.2014) (finding that a reprimand supported a retaliation claim where the supervisor previously stated he would find a way to fire plaintiff)). However, generally, "a written reprimand, without evidence of consequences, does not constitute an adverse employment action." *Id.* While not required to put on evidence at the motion to dismiss stage, these claims from Plaintiffs, in light most favorable to them, do not satisfy the requirement of an adverse

---

[2] The only issue raised in this motion is whether Plaintiffs claims qualify as adverse employment actions.

11

employment action because no apparent consequences arose from these claims. However, Plaintiffs will be given leave to amend their complaint to state a cause of action for these allegations.

**(iii.)** Defendants' Motion is **GRANTED** with respect to the claims arising from (J)(2) and (J)(5). Plaintiffs have essentially conceded that these claims are not cognizable individually. Thus, these claims are dismissed, and no leave will be granted to amend these claims.

**(K) IT IS FURTHER ORDERED** that, with respect to each claim that the Court has granted Plaintiffs leave to amend, Plaintiffs are given fifteen (15) days from the issuance of this order in which to do so, if they so choose or can do so in good faith. Signed in Baton Rouge, Louisiana, on September 28, 2015.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**